UNITED STATES of America, Appellee,

v.

Larry Lee WHITE, a/k/a Felix Idleburg, Appellant.

UNITED STATES of America, Appellee,

v.

Doris WADE a/k/a Janice Handson, Appellant.

Nos. 88–2457, 88–2458.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1989.

Decided Nov. 28, 1989.

Rehearing and Rehearing En Banc Denied in No. 88–2457 Feb. 22, 1990.

Charles E. Polk, Jr., St. Louis, for White.

James Delworth, St. Louis, for Wade.

James K. Steitz, Asst. U.S. Atty., St. Louis, for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSON,* Senior District Judge.

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

HANSON, Senior District Judge.

Appellees White and Wade appeal their conviction by jury of drug related crimes. The two were tried together in a conspiracy case before the Honorable George F. Gunn. White presents four causes for reversal. He argues that: (1) the trial court improperly allowed the use of "drug courier profiles" as substantive evidence of guilt; (2) the trial court erred in denying his motion for severance of trials; (3) the government improperly commented on his failure to testify; (4) the sentencing guidelines were unconstitutional in their application to this case. Wade joins in the challenges of the use of the "drug courier profiles" and the constitutionality of the sentencing guidelines. She also challenges the admissibility of evidence used at trial as the fruit of an illegal search. The court, for the reasons discussed below, finds all of the challenges without merit and affirms the convictions. We first address the common challenges.

Constitutionality of Sentencing Guidelines

Appellants challenge the constitutionality of the sentencing guidelines as: a violation of the separation of powers doctrine; a violation of their due process rights; and a violation of the presentment clause. Appellants' separation of power challenges were rejected by the Supreme Court in *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Appellants' due process challenges were rejected by this court in *United States v. Barnerd,* 887 F.2d 841, 842 (8th Cir.1989), *United States v. Nunley,* 873 F.2d 182, 186 (8th Cir.1989) and *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.1989). The presentment clause challenge was also rejected in *Barnerd.* At 842. Accordingly, we reject the challenges of appellants on this issue.

Drug Courier Profiles

Appellants' allegations that "drug courier profiles" were used during the trial as substantive evidence of guilt raises a troublesome issue for the court because such

profiles "are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers." *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983). As noted by the *Hernandez* court:

> Generally, the admission of this evidence is nothing more than the introduction of the investigative techniques of law enforcement officers. Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officers in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation. Although this information is valuable in helping drug agents to identify potential drug couriers, we denounce the use of this type of evidence as substantive evidence of a defendant's innocence or guilt.

*Id.* at 555. Additionally, the profile has a "chameleon-like way of adapting to any particular set of observations." *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 1588, 104 L.Ed.2d 1 (1989) (Marshall, J., dissenting).[1]

■ However, it is also well established that it is within a federal court's discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers and other criminals in areas concerning activities which are "not something with which most jurors are familiar." *United States v. Daniels*, 723 F.2d 31, 33 (8th Cir.1983) (trial court's allowance of testimony by expert that drug dealers often register their cars and apartments in names of others not an abuse of discretion); *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir.1979) (trial court's allowance of testimony concerning nature

of gambling operations, gambling terminology and opinion as to defendant's role in operation not an abuse of discretion). The trial court's discretion to allow such testimony arises from Fed.R.Evid. 702 which "allows a qualified witness to testify in the form of an opinion if the witness's specialized knowledge will help the factfinder to understand the evidence or determine a fact in issue." *Daniels*, 723 F.2d at 33. Such testimony, however, is "subject to exclusion under Rule 403 if its probative value is substantially outweighed by the risks of unfair prejudice." *Id.* In making the Rule 403 determination we give "great deference to the district judge, who saw and heard the evidence." *Id.*

■ We find that the challenged testimony, prejudicial by its nature, was probative in explaining the modus operandi of the crimes defendants were charged with. It was not simply an introduction of a drug courier profile as substantive evidence of guilt. "Thus, the question becomes one of balance" and one in which we must give the trial court "great deference". *Id.* In making this balance we find it relevant that defendants' guilt was clearly and overwhelmingly established by the remaining evidence in the record, making the modus operandi evidence of little significance. Accordingly, we are unwilling to find that the district court so abused its discretion as to warrant a reversal of the conviction. This finding does not indicate any belief that the district court followed the best course in admitting all of the evidence that was admitted, or that we favor admission of such evidence in general. Instead we merely find that in this case there was no clear abuse of discretion and that appellants' challenges on this ground must fail.

---

**1.** Justice Marshall documented this chameleon-like nature with the following listing of some of the "drug courier" characteristics relied upon in various cases:

> Compare e.g., *United States v. Moore* (suspect was first to deplane), with *United States v. Mendenhall* (last to deplane), with *United States v. Buenaventura–Ariza* (deplaned from middle); *United States v. Sullivan* (one-way tickets), with *United States v. Craemer* (round-trip tickets), with *United States v. McCaleb*

(non-stop flight), with *United States v. Sokolow* (changed planes); *Craemer, supra* (no luggage), with *United States v. Sanford* (gym bag), with *Sullivan, supra* (new suitcases); *United States v. Smith* (traveling alone), with *United States v. Fry* (traveling with companion); *United States v. Andrews* (acted nervously), with *United States v. Himmelwright* (acted too calmly).

*Sokolow*, 109 S.Ct. at 1588–89 (citations omitted) (Marshall, J., dissenting).

## The Bathroom Search

We turn next to appellant Wade's assertion that she was subjected to illegal searches while occupying restrooms at the airport. The first of these searches occurred shortly after Wade had deplaned from her flight to Los Angeles when a female officer followed her into an airport restroom. Once in the restroom Wade entered one of the stalls and the officer observed what she could of Wade's actions through a gap between the bathroom stall door and the bathroom stall wall. The officer made her observations from the common area of the restroom by looking through the gap from a distance, and by looking through the gap via the reflections of the bathroom mirror. She did not position herself in any way that would be unexpected by someone using the restroom. Specifically, she did not peer in "knothole fashion" through the gap. Nor did she look under or over the bathroom stall door.

The court finds that the observations made by the officer were not an illegal search in this case because they were not a violation of any reasonable expectations of privacy. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A bathroom stall, such as at issue here,

> does not afford complete privacy, but an occupant of the stall would reasonably expect to enjoy such privacy as the design of the stall afforded, i.e., to the extent that defendant's activities were performed beneath a partition and could be viewed by one using the common area of the restroom, the defendant had no subjective expectation of privacy, and, even if he did, it would not be an expectation which society would recognize as reasonable.

*People v. Kalchik*, 160 Mich.App. 40, 407 N.W.2d 627, 631 (1987). Thus, although Wade could reasonably expect a significant amount of privacy in the bathroom stall, this expectation was not violated in this case because the design of the stall allowed the officer to make her observations without placing herself in any position that would be unexpected by an occupant of the stall.

The second search occurred when Wade entered a second bathroom after conversing with co-defendant White. In this instance an officer knocked the bathroom door open after Wade failed to respond to a demand to open the door. This demand was made based on the officer's conclusion that Wade was in the process of destroying evidence.

The court finds that there was probable cause for the officer's action in the second bathroom and that the seizure of the cocaine in the bathroom was valid as incident to Wade's arrest. The evidence at trial and at a hearing on a motion to suppress establish that it was reasonable to assume that Wade was involved in illegal activity and was in the process of trying to destroy evidence in the bathroom. The court incorporates by reference the analysis of Magistrate Carol Jackson's June 20, 1989 report and recommendation on this point. Accordingly, this challenge is also denied.

## The Government's Comment on White's Silence

White's allegation that the trial court should have declared a mistrial because of the government's comment on his failure to testify is also without merit. The challenged comment consisted of the government's statement during closing argument that "[y]ou didn't hear why Larry White used the word—the name Idleburg." White's counsel immediately objected to this statement as an inappropriate comment on White's failure to testify. The trial court sustained the objection and instructed the jury to disregard the comment. This is not sufficiently prejudicial to warrant a mistrial. It had little cumulative effect when viewed in context of the entire trial, the trial court took curative actions, and there was an abundance of properly admitted evidence establishing defendant's guilt. *See United States v. Dougherty*, 810 F.2d 763, 767–68 (8th Cir.1987).

## The Denial of Severance

White's assertion that the trial court committed reversible error by not

severing his and Wade's trials is similarly unconvincing. Rule 8(b) of the Federal Rules of Criminal Procedure permits joinder of defendants when the defendants are alleged to have participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Further, it is a general rule that persons charged with conspiracy should be tried together, particularly in cases such as this "where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Lee*, 743 F.2d 1240, 1248 (8th Cir.1984). White has presented no convincing reason why this general rule is inapplicable to this case. Thus, severance was not necessary.

### Conclusion

We affirm the convictions.