UNITED STATES of America,
Plaintiff–Appellee,

v.

Aundre ROSS, Defendant–Appellant.

No. 89–2705.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1990.

Decided June 20, 1990.

Rocco J. DeGrasse, Laurie J. Barsella, and Barry R. Elden, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Walter Jones, Jr., Curiel & Jones, Chicago, Ill., for defendant–appellant.

Before WOOD, Jr., COFFEY, Circuit Judges, and NOLAND, Senior District Judge.*

NOLAND, Senior District Judge.

Aundre Ross appeals the sentence imposed after he entered a guilty plea to conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and use of a communication device to facilitate the commission of a felony narcotics offense, 21 U.S.C. § 843(b). The sentence was governed by the Sentencing Guidelines ("Guidelines") promulgated by the United States Sentencing Commission. Ross asserts that the Guidelines assign weight to various factors without permitting adjustment to reflect relative uncertainties about underlying facts, in violation of due process rights, and that the evidence adduced at the sentencing hearing did not support the conclusion that he was reasonably capable of participating in a six kilogram cocaine transaction. We affirm.

## I. BACKGROUND

### A. *Facts*

In late May and early June, 1988, defendant Aundre Ross agreed to participate in a narcotics transaction with a man named Willie Gibson because the defendant's video cassette business was in terrible financial condition. On June 2, 1988, the defendant and Gibson spoke about locating someone to supply cocaine to a friend of the defendant. Gibson made a telephone call to a potential source. Unbeknownst to either of the pair, the potential source was Ed Williams, a Drug Enforcement Administration ("DEA") informant. Defendant and Williams discussed the latter providing defendant with five kilograms of cocaine for $85,000. The defendant stated that he had received a price of "16–5" in the past and he agreed to pay $85,000 for five kilo-

grams of cocaine. This conversation was tape-recorded.

The defendant and Gibson attempted to purchase the cocaine on June 7, 1988. Defendant told Gibson that he wished to purchase six kilograms of cocaine instead of five kilograms as discussed earlier. He inquired as to the price for six kilograms; Gibson replied that six kilograms would cost $100,000. The defendant told Gibson that this price was acceptable.

Gibson telephoned the defendant and arranged to meet at the Unbeatable Restaurant in Country Club Hills, Illinois. The defendant arrived alone with a bag containing $50,000 in cash. Together they drove in Gibson's automobile to a restaurant parking lot where they had arranged to meet Williams, the DEA informant. The location for the transaction was determined by the DEA informant. On the way to the site, defendant told Gibson that the remainder of the cash payment was in a blue Camaro parked in a nearby baseball park.

Gibson arrived at the restaurant parking lot and saw Williams with another individual. This individual was DEA Special Agent Thomas Kelly. The informant introduced Gibson and the defendant to Kelly. The defendant informed Kelly that he would be supplying the money for the cocaine. Kelly asked whether they would be dealing on a regular basis because he did not want to engage in a "one-time" deal. Defendant replied that there would be additional transactions if the quality of the cocaine was as good as Kelly claimed. Defendant also told Kelly that other individuals were watching the transaction.

Kelly asked if the defendant had the $100,000 on his person. The defendant replied that he had split the money for security reasons. He told Kelly the remaining $50,000 was in a vehicle nearby. Defendant asked to see the cocaine. Kelly sat on the front passenger seat of Gibson's vehicle and began to count the money that the defendant supplied to him. Kelly counted the bundles, placed them back into

*The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

the bag, stood up, and gave a pre-arranged arrest signal. Gibson was arrested. Defendant attempted to flee.

Gibson cooperated with authorities at the scene. He told Kelly that he believed additional money was in a dark blue Camaro. Surveillance agents did not notice any other individuals or automobiles that appeared to be connected to the transaction. The transaction occurred at a major intersection in a suburban area; vehicles could be parked in the vicinity and remain undetected. Agents were unable to locate the vehicle that purportedly contained the remainder of the money. Gibson stated that defendant agreed to pay $100,000 for six kilograms of cocaine and never expressed concern over obtaining the money.

Defendant was indicted on two drug related charges. He pleaded guilty to both charges on September 6, 1988. Defendant, in his plea agreement, admitted telling Kelly that half of the cash payment was in a vehicle nearby. Defendant also admitted that he had discussed additional business he would have with Kelly, Williams, and Gibson in the future.

### B. Sentencing Hearing

Defendant's original sentence did not apply the Sentencing Guidelines because the district court had adopted an order declaring the Guidelines to be unconstitutional. The court sentenced defendant to one year and one day imprisonment for use of a communication device to facilitate the commission of a felony narcotics offense, 21 U.S.C. § 843, and five years probation for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846. This sentence was vacated and defendant was resentenced on August 1, 1989, in light of the Supreme Court's holding in *United States*

*v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), that the Guidelines were constitutional.

The district court conducted an evidentiary hearing to provide the defendant with an opportunity to challenge statements attributed to him during the attempted narcotics transaction. Defendant denied that he had ever engaged in narcotics trafficking prior to this offense. He also denied intending to purchase six kilograms, keeping $50,000 in a second automobile, or discussing future cocaine transactions with anyone. Defendant maintained that he intended to purchase three kilograms and that he had difficulty acquiring the money. He claimed that he discussed six kilograms in order to negotiate a better price.

At sentencing, the court noted that it had listened to tape cassettes of a number of conversations and that it had reviewed DEA case reports. The court found Special Agent Kelly's testimony to be more credible than the defendant's. It also found defendant to be a sophisticated person capable of negotiating narcotics transactions and not a mere intermediary. Finally, the court found by a preponderance of the evidence that the defendant was reasonably capable of participating in an attempted purchase of six kilograms of cocaine. The court then sentenced defendant to a term of 97 months imprisonment. This sentence was the minimum sentence under the Guidelines range. The court also placed defendant on three years supervised release following his imprisonment and levied a special assessment of $100.

### II. ANALYSIS

■ Appellate review of a district court's sentencing determination is governed by 18 U.S.C. § 3742(e) and (f).[1] De-

---

**1.** Subsections (e) and (f) of section 3742 provide:

(e) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—
  (1) was imposed in violation of law;
  (2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable, having regard for—
  (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
  (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

fendant initially contends that Guidelines § 2D1.4 violates his due process rights by assigning weight to various factors without permitting adjustment to reflect the relative uncertainty about underlying facts. Guidelines § 2D1.4 provides:

If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

The Application Notes to this section provide in pertinent part:

If the defendant is convicted of an offense involving negotiations to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

Defendant relies primarily on *United States v. Davis*, 715 F.Supp. 1473 (C.D.Cal. 1989), to support his contention that § 2D1.4 violates the dictates of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).[2]

In *Davis, supra*, the amount of money brought to the transaction by the defendants was insufficient to carry out the bargain. The district court was left to approximate the amount of drugs involved in the offense under § 2D1.4. The court found that § 2D1.4 violates the Due Process Clause because:

The difference between 10 months imprisonment and a life sentence can turn upon the accuracy of the court's assessment of the "scale of the offense," notwithstanding the lack of reliable information upon which to make that determination. Yet the Guidelines do not permit the judge to adjust the length of the sentence to reflect the degree of certainty by which the estimate is made. Almost no greater example of a sentencing factor in which the "tail wags the dog of the substantive offense" could be imagined.

*Davis*, 715 F.Supp. at 1479. The *Davis* court continued, "[A]ny attempt to control the basic nature of discretion by quantification and separation of the factors to be

---

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

(f) Decision and disposition
If the court of appeals determines that the sentence—
(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;
(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and—
(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence

and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;
(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;
(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

**2.** In *Winship*, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute that crime with which he is charged." *In re Winship*, 397 U.S. at 364, 90 S.Ct. at 1073. Due process also requires the prosecution to prove beyond a reasonable doubt the absence of heat of passion on sudden provocation, a fact that would reduce murder to manslaughter, when the issue is properly presented in a homicide case. *Mullaney*, 421 U.S. at 704, 95 S.Ct. at 1892. These cases deal with the standards necessary for conviction. Defendant pleaded guilty to the charges against him.

considered and preassignment of the weights to be given is ultimately doomed to failure." *Id.* at 1483. We, like the Second Circuit and Tenth Circuit, are not persuaded by the reasoning of *Davis*.[3] *See United States v. Frederick,* 897 F.2d 490, 493 (10th Cir.1990); *United States v. Candito,* 892 F.2d 182, 186 (2d Cir.1989). The Guidelines limit judicial discretion but this limitation does not violate due process. *United States v. Pinto,* 875 F.2d 143 (7th Cir.1989); *see also United States v. Vizcaino,* 870 F.2d 52 (2d Cir.1989) (that defendant cannot challenge the weight accorded to various factors used to calculate his sentence does not deny him due process). Furthermore, defendant has not identified a sentencing factor accorded excessive weight by the district court.

■ In the present case, the district court applied the preponderance of the evidence standard when considering the amount of drugs involved in the offense. In a similar challenge to a state statute, the Supreme Court approved the use of the preponderance of the evidence standard when considering sentencing factors. *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The Supreme Court held that sentencing factors can be proven by the preponderance standard without violating due process. 477 U.S. at 84–91, 106 S.Ct. at 2415–2419. This approach has been adapted to cases involving the Sentencing Guidelines. *United States v. Blanco,* 888 F.2d 907 (1st Cir.1989); *Candito, supra; United States v. McDowell,* 888 F.2d 285 (3d Cir.1989); *United States v. Urrego–Linares,* 879 F.2d 1234 (4th Cir.1989); *United States v. Barnerd,* 887 F.2d 841 (8th Cir.1989); *United States v. Burke,* 888 F.2d 862 (D.C.Cir. 1989). Proof of sentencing factors under the Guidelines by a preponderance of the evidence satisfies due process.

We have held previously that the quantity of a controlled substance involved in a cocaine transaction is a sentencing determination to be made by the sentencing judge. *United States v. Ocampo,* 890 F.2d 1363 (7th Cir.1989). This Court has noted that "[t]he amount of narcotics considered in sentencing for conspiracy includes not only the amount involved in the transactions that were known to the defendant but also those that were reasonably foreseeable, reflecting the fact that each conspirator is responsible for the acts and offenses of each one of his co-conspirators committed in furtherance of the conspiracy." *United States v. Savage,* 891 F.2d 145, 151 (7th Cir.1989); *United States v. White,* 888 F.2d 490 (7th Cir.1989). Application Note 1 to section 1B1.3 of the Guidelines states that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." A defendant who pleads guilty to a conspiracy narcotics charge thus "is held accountable, for purposes of determining his relevant conduct and the applicable guideline range, for all drug transactions that he was aware of or that he should have reasonably foreseen." *United States v. Guerrero,* 894 F.2d 261, 266 (7th Cir. 1990).

■ The trial court's finding that defendant was reasonably capable of participating in a six kilogram cocaine transaction is a factual one and thus our standard of review is one of clear error.[4] *United States v. Agyemang,* 876 F.2d 1264, 1271 (7th Cir.1989). A careful examination of the record discloses ample evidence to support the court's finding. Defendant admit-

---

**3.** The Ninth Circuit has since held that predetermined weight accorded to particular sentencing factors under the Guidelines does not violate due process. *United States v. Brady,* 895 F.2d 538, 543 (9th Cir.1990).

**4.** Plaintiff contends that this Court lacks jurisdiction to consider whether the district court properly refused defendant's request for a downward departure from the applicable Guideline range. As such, plaintiff misconstrues de-

fendant's appeal. Defendant contends that the district court improperly determined that he was reasonably capable of participating in a six kilogram drug transaction rather than a three kilogram transaction. 18 U.S.C. § 3742(a). Appellate review is preserved in such cases:

> [C]onstitutional rights can be violated if [the defendant] demonstrates 'grave doubts as to the veracity of the information ... [and] that the court relied on that false information in

ted that he negotiated for the purchase of six kilograms of cocaine. Defendant had knowledge of cocaine prices, he indicated that he wanted to purchase six kilograms of cocaine, he accepted a price of $100,000, and he never indicated any concern about paying that amount. The trial court noted the damaging nature of tape recorded conversations on defendant's position. The court also noted that the taped conversations and testimony of Gibson and Kelly corroborated one another. Disputed facts were resolved against the defendant. An appellate court must give "due deference" to the trial court's credibility determinations. 18 U.S.C. § 3742(d). The court's findings are not clearly erroneous.

### III. CONCLUSION

For the foregoing reasons, the district court correctly applied the Guidelines when it sentenced Aundre Ross. The court's factual findings concerning the defendant's reasonable capability of participating in a six kilogram transaction are not clearly erroneous. The sentence is therefore AF-FIRMED.

determining the sentence.' Although ... [defendant] does not argue explicitly that his sentence was imposed in violation of law for any other reason, we assume that in such a case, appellate review under section 3742(a)(1) would be available.

*United States v. Franz,* 886 F.2d 973, 980 (7th Cir.1989). Defendant's claim falls into this category.